IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

KEVIN GLENN ADKINS,

        Plaintiff,

V.                                                           CIVIL ACTION NO. 3:08-1010

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

**FINDINGS AND RECOMMENDATION**

        In this action, filed under the provisions of 42 U.S.C. §§ 405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

        Plaintiff filed his application on July 14, 2005, alleging disability commencing June 12, 2003, as a consequence of hypertension, chronic pain of the neck, low back, shoulder and knees, anxiety and depression. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

        At the time of the administrative decision, plaintiff was thirty-seven years of age and had obtained a high school education. His past relevant employment experience consisted of work as a

security guard, lottery machine repair technician and personal care giver. In his decision, the administrative law judge found that plaintiff suffered from vertebrogenic disc disease of the lumbar and cervical spine, chronic shoulder pain, chronic bilateral knee pain and obesity, impairments which he determined were severe. Though concluding that plaintiff was unable to perform his past work,[1] the administrative law judge determined that he had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.21 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff's medical history is significant for past surgery on the cervical spine for fusion of the C5 and C6 discs[3] with residual pain. He had a left shoulder injury resulting in two arthroscopic surgeries to repair a tear in the labrum, leaving him with some residual weakness and limited motion. Plaintiff also has degenerative disc disease in the lumbar spine, having developed disc protrusion at two levels and radiculopathy down the right leg; right shoulder and arm pain due to injury; and a remote history of knee surgery with possible patellofemoral arthritis in both knees.

Treatment, in addition to surgery, has included medication, physical therapy, epidural steroid injections, use of a TENs unit and therapy for what was diagnosed as major depressive disorder, recurrent, moderate. The administrative law judge, indicating he found the assessments from the state

---

[1]This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2]20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

[3]CT scan in April 2007 also revealed congenital fusion of the C2 and C3 discs.

agency medical advisors persuasive, found plaintiff capable of light level work limited by an inability to climb ladders, ropes or scaffolds or to more than occasionally climb stairs, balance, stoop, kneel, crouch or crawl. He could not work in temperature extremes, around vibration, around open, dangerous machinery, at heights or do overhead work. Also, the administrative law judge determined he needed to have the ability to alternate between sitting and standing at thirty-minute intervals.

Plaintiff raises two arguments in support of his contention that the administrative law judge's decision is not supported by substantial evidence. First, he asserts it was error for the administrative law judge to find his mental impairment not severe because it did not meet the duration requirement. Second, he argues that the hypothetical question to the vocational expert was deficient because it did not contain all the limitations found by the state agency medical advisors, whose assessments the administrative law judge adopted and made the basis for his hypothetical questions.

The regulations define a severe impairment as one which "significantly limits" physical or mental ability to do basic work activities.[4] With regard to mental functioning, those activities include understanding, remembering and carrying out simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.[5] In addition, 20 C.F.R. § 404.1520a provides that the Commissioner must follow a "special technique" when evaluating the severity of mental impairment in adults. It involves the assessment of activities of daily living, social functioning, concentration, persistence or pace and

---

[4] 20 C.F.R. §§ 404.1520(c), 404.1521.

[5] 20 C.F.R. § 404.1521(b).

episodes of decompensation.[6] Here, the state agency medical advisors, in assessments dated November 23, 2005 and April 10, 2006, determined that plaintiff had mild limitation of activities of daily living, social functioning and concentration, persistence or pace and no evidence of decompensation due to depression. According to 20 C.F.R. § 404.1520a(d)(1), if the degree of limitation in the first three areas is "none" or "mild," and the degree of limitation in the last area is "none," the Commissioner "will generally conclude that [the] impairment(s) is not severe," unless the evidence suggests there is "more than a minimal limitation" in ability to do basic work activities.

Both of the state agency evaluators concluded plaintiff complaints appeared credible but rated his restrictions as mild. Plaintiff asserts these findings conflict with the diagnosis of major depressive disorder, single episode, moderate, provided by the Commissioner's consultative evaluator, Penny Perdue, M.A.; with reports from plaintiff's primary care physician, Bradley Richardson, who prescribed him medication for depression and generalized anxiety disorder; and with the diagnosis of major depressive disorder, recurrent, moderate, from Steven Cody, Ph.D., who was providing therapy for plaintiff.

The administrative law judge, discussing plaintiff's mental functioning, observed that he did not mention any difficulty in this area at the hearing until his attorney brought this subject up and suggested that plaintiff had displayed "psychological distress" when he first met with her. He testified, however, that therapy, which he began in December 2006, "helped me in a lot of ways, more so than I ever thought it would." He claimed it made him more rational and helped him deal with his own problems, among other benefits. The administrative law judge found that a March 1, 2007 statement from Dr. Cody confirmed plaintiff's testimony. This psychologist recounted the date

---

[6]20 C.F.R. § 404.1520a(b)(3).

4

on which plaintiff began treatment, his diagnosis, the number of sessions plaintiff had attended and stated his opinion that plaintiff "appears motivated and seems to be making good progress," observations which are consistent with his treatment notes.

The administrative law judge concluded that plaintiff's symptoms had been "adequately addressed with psychotherapy" and found nothing to indicate that his depression had caused "more than minimal disturbance" in his ability to perform normal daily activities or work-related activities or that it had lasted for "a continuous period of at least twelve months."[7] The record supports these findings. Despite some tearfulness noted at the consultative evaluation and in his first couple sessions with Dr. Cody, these symptoms did not last, as the reports confirm. Even prior to starting treatment, the record does not indicate that his depression imposed more than mild limitation on his daily living activities, social functioning or concentration, persistence and pace. Dr. Tao, who saw plaintiff numerous times for shoulder problems, almost always commented on his alertness, orientation and affect. No abnormalities in this regard were documented at any of plaintiff's office visits; however, on July 27, 2005, he wrote to workers' compensation requesting plaintiff be referred to a psychiatrist to evaluate his mental health. He noted plaintiff had developed symptoms of anxiety and depression related to his inability to find a job he could perform because of the pain in his shoulder. No symptoms of this nature were noted on July 12, the office visit prior to this letter, and none were noted at the visit following on August 9, 2005.

Despite having a depressed mood and restricted affect when seen by Ms. Perdue, plaintiff was cooperative, interacted appropriately, and had adequate eye contact and verbal responses.

---

[7] See, 20 C.F.R. § 404.1509.

Judgment was considered within normal limits as was concentration, immediate and remote memory. A marked limitation of recent memory was the only significant abnormality observed.

Plaintiff's reports of his activities of daily living also suggest that limitations he experiences are mainly due to pain rather than a mental impairment, although there is some indication he did not socialize as much after the onset of his physical problems. Nevertheless, he reported being involved in his daughter's and step-daughter's lives and that he has a good relationship with them and with his ex-wife. As the administrative law judge found, plaintiff's mental impairment appeared to have only minimally affected his functioning. If there were a worsening of symptoms around the time treatment was begun, it is apparent, as the administrative law judge concluded, that the increased symptoms did not remain at a "severe" level for twelve continuous months. Plaintiff's argument in this regard is, therefore, found to be unpersuasive.

With regard to plaintiff's argument that the administrative law judge's hypothetical question was deficient, he points to the assessments completed by the state agency medical advisors, noting they checked a box which states he would be unable to reach "in all directions (including overhead)." Plaintiff alleges these assessments do not support the administrative law judge's finding that he would be limited only in reaching overhead with the left arm. Plaintiff seems to have failed to recognize, however, that both state agency medical advisors, in discussing their finding as to reaching, clarified that the limited reaching ability in the left upper extremity was only overhead, not all directions, as the form indicated. Therefore, this portion of plaintiff's argument is clearly meritless.

He also asserted that the administrative law judge failed to adopt the limitation noted by Dr. Tao that lifting would be restricted to no more than ten pounds with the left arm. The

...

administrative law judge discussed and considered this particular limitation, and it is apparent from his discussion that he believed limiting plaintiff to light level work (lifting up to twenty pounds occasionally, ten frequently)[8] adequately took account of this restriction. Plaintiff testified at the hearing he felt he could lift twenty pounds, and, as the Commissioner states, if plaintiff were required to lift over ten pounds, he could use the right arm as support. The Court finds that the hypothetical questions, which incorporated the administrative law judge's findings, were "proper" and "fairly set out all of claimant's impairments"[9] and concludes this argument also has no merit. From its review of the record, the Court is satisfied that the administrative law judge's findings with respect to plaintiff's impairments, the resultant work-related limitations, the weight given various medical opinions, the assessment of plaintiff's credibility and the hypothetical questions presented to the vocational expert are supported by substantial evidence. Under such circumstances, the decision of the Commissioner should be affirmed.

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provision of Rule 72(b), Fed.R.Civ.P., the parties may, within

---

[8] 20 C.F.R. § 404.1567(b).

[9] Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).

thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. § 636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and mail a copy of the same to all counsel of record.

DATED: September 9, 2009

/s/ Maurice G. Taylor, Jr.
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE